2021 IL App (2d) 200095
No. 2-20-0095
Opinion filed January 11, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| RACHEAL KALISZ, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-MR-610 |
| | ) | |
| THE BOARD OF EDUCATION OF | ) | |
| KILDEER COUNTRYSIDE COMMUNITY | ) | |
| CONSOLIDATED SCHOOL DISTRICT 96, | ) | |
| and THE ILLINOIS STATE | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
|     Defendants | ) | |
| | ) | |
| (The Board of Education of Kildeer | ) | Honorable |
| Countryside Community Consolidated School | ) | Jorge L. Ortiz, |
| District 96, Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff—Racheal Kalisz, a tenured teacher—filed a complaint in the circuit court of

Lake County against the defendants—the Board of Education of Kildeer Countryside Community

Consolidated School District 96 (Board) and the Illinois State Board of Education—seeking

administrative review of her dismissal for cause from employment. The trial court reversed the

Board's decision and ordered the plaintiff reinstated with back pay and benefits. The Board appeals from this order. We reverse the trial court and affirm the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3      In 2016, the plaintiff was a full-time tenured teacher who had been employed by the Board for over 15 years as an elementary school teacher. In February 2016, the plaintiff notified her supervisor that she was being investigated by the Department of Children and Family Services (DCFS) concerning an allegation of abuse involving her children. As a matter of procedure, the Board commenced its investigation, and the plaintiff was suspended with pay. The Board's assistant superintendent for human resources, Dr. Beth Dalton, met with the plaintiff four times. At the first meeting, the plaintiff refused to answer Dalton's questions. At the second meeting, the plaintiff again refused to answer most of Dalton's questions. However, in response to questions about the incident that led to the DCFS investigation, the plaintiff denied that a physical confrontation had occurred or that there were any physical threats.

¶ 4      On April 6, 2016, the plaintiff received a letter from DCFS, notifying her that the allegation of abuse against her was determined to be unfounded. The plaintiff's union representative sent a copy of the letter to the Board. The letter did not include a copy of the DCFS report.

¶ 5      On April 18, 2016, Dalton met with the plaintiff a third time. When questioned, the plaintiff stated that she could not remember if there was physical contact during the incident that led to the DCFS investigation but also stated that there was "possibly shoving." The plaintiff was allowed to return to the classroom after this meeting.

¶ 6      The Board subsequently received a copy of the DCFS report. The information in the report was inconsistent with what the plaintiff had stated in her meetings with Dalton. On May 3, 2016, Dalton met with the plaintiff the fourth time, to address the inconsistencies. The plaintiff told

Dalton that the DCFS report was inaccurate. Dalton believed the plaintiff had either lied to her or lied to DCFS. Dalton concluded that the plaintiff had lied to her, because the DCFS report contained consistent stories from multiple individuals and because there would have been significant consequences for lying to DCFS.

¶ 7      After the final meeting, Dalton recommended that the Board issue a notice of remedial warning. On May 10, 2016, Dalton notified the plaintiff of the recommendation she was making to the Board and informed the plaintiff that she could attend the Board meeting and address the Board in a closed session before it decided whether to issue the warning. The plaintiff and her union representatives did not appear before the Board.

¶ 8      On May 17, 2016, the Board approved the issuance of the notice of remedial warning. The Board sent the notice to the plaintiff the following day. The notice informed the plaintiff that her conduct as a teacher was unprofessional and unsatisfactory in that she failed to cooperate with the Board's investigation of the DCFS matter, she obstructed the Board's investigation process, and she provided untruthful statements. The notice stated that the following conduct, if repeated, would result in charges for the plaintiff's dismissal: (1) engaging in conduct that is unbecoming of a Board employee; (2) failing to cooperate with Board administration during its investigation; (3) giving false statements to Board administration during its investigation; (4) showing poor professional judgment and unprofessional conduct in her handling of the Board's investigation into her conduct; (5) violating Board policy 5:120, entitled "Ethics and Conduct," by failing to maintain high standards of service, to demonstrate integrity and honesty, and to be considerate and cooperative; (6) engaging in "misconduct," as defined by Board policy 5:38, including unlawful behavior that relates to employment duties, behavior that disrupts the educational process, and immoral conduct; (7) violating Board policy 5:32, entitled "Rights, Responsibilities, and Duties,"

by failing to maintain standards of service as required by a teacher; and (8) engaging in insubordinate conduct by disregarding Board policies and directives.

¶ 9    The notice to remedy further stated that the plaintiff should immediately cease the conduct set forth above and take the following steps to remedy her unprofessional and unsatisfactory conduct: (1) abide by all expectations set forth in Board policies; (2) cooperate with Board officials at all times; (3) be truthful when communicating with Board administration and in her duties as a teacher; (4) exercise appropriate and professional judgment as a teacher; (5) conduct herself in a professional manner as expected of all Board employees; (6) strictly adhere to the terms of the notice of remedial warning; and (7) follow all the Board's policies, procedures, and practices. Finally, the notice stated that the plaintiff's failure to remedy her unprofessional, unsatisfactory, and insubordinate conduct, as described, would result in charges being placed against her for dismissal.

¶ 10    During the 2017-2018 school year, the plaintiff taught eighth-grade social studies at one of the Board's elementary schools. The school used a teaching model wherein each classroom had a content teacher and a specialist who assisted in designing the lesson plans for English language learners and special needs students. The plaintiff was the content teacher, and Leslie Yu was the specialist in the fourth-period class.

¶ 11    The Board became aware that the plaintiff was often leaving her fourth-period classroom, during co-teaching and while students were present, for various reasons. In November 2017, the plaintiff left to look at decorations that sixth graders had placed on the locker of a recently deceased student. In January 2018, the plaintiff left her classroom for 20 to 25 minutes to make a phone call regarding a continuous positive airway pressure (CPAP) machine. In February 2018, the plaintiff left for 15 to 20 minutes to speak with a colleague and left again for 10 to 15 minutes to smoke a

cigarette. In March 2018, the plaintiff left the classroom for 30 to 40 minutes to make a phone call to an airline regarding her flight status. Before she left, the plaintiff acknowledged that it was unprofessional to leave the classroom but told Yu that she needed to rearrange her flight.

¶ 12    On March 22, 2018, the plaintiff again left the fourth-period class, telling Yu that she was experiencing stomach issues and needed to leave. Before leaving, the plaintiff arranged for another teacher to cover her fifth-period social studies class. The plaintiff did not notify anyone from the administration or seek approval, did not request personal or sick time to cover her absence, and did not formally request that the school office procure substitutes to cover her classes. The record indicates that, after the fifth period, the plaintiff did not instruct any other classes and that the rest of the day was to be used for planning.

¶ 13    On April 23, 2018, Principal Greg Grana spoke with Yu and another teacher regarding the plaintiff's frequent departures from the classroom. This prompted the Board to begin a formal investigation. On May 1, 2018, Grana met with the plaintiff and questioned her about her departure on March 22. The plaintiff admitted that she had left during the fourth-period class and did not return to school, had found someone to cover her remaining class, and did not seek approval from the administration. In later meetings with Grana and Dalton, the plaintiff admitted that she left the classroom to look at sixth-grade decorations, make a phone call regarding a CPAP machine, rearrange an airline flight, speak with a colleague, and smoke a cigarette.

¶ 14    Thereafter, Dalton recommended to the Board that the plaintiff be dismissed from her employment. On June 12, 2018, Dalton sent the plaintiff a letter explaining the basis for her recommendation and notifying the plaintiff that she could appear before the Board with union representatives to address the recommendation. On June 19, 2018, the plaintiff did not appear at the meeting, and the Board approved the recommendation to dismiss the plaintiff.

¶ 15    On June 20, 2018, the plaintiff was sent a notice of the charges, including a bill of particulars, which was the basis for her dismissal. The letter stated that the dismissal was based on the following charges for conduct that occurred during the 2017-2018 school year: (1) leaving students unattended during classroom time on multiple occasions; (2) leaving the classroom during co-teaching to look at sixth-grade decorations in the hallway, making a 25-minute phone call regarding a CPAP machine, making a 30-to-40-minute phone call to an airline, talking to a colleague for 15 to 20 minutes, and smoking a cigarette; (3) leaving the classroom while students were present without informing the Board's administration; (4) on March 22, 2018, giving authority to other colleagues to cover her classes without informing the Board's administration; and (5) exercising unprofessional judgment and violating Board policies related to ethics, conduct, responsibilities, and duties. For these reasons, the Board asserted that the plaintiff failed to remediate the behaviors as required in her 2016 notice of remedial warning.

¶ 16    The plaintiff requested an administrative hearing to challenge the Board's determination before an independent hearing officer, per section 24-12(d)(1) of School Code (105 ILCS 5/24-12(d)(1) (West 2016)). At the hearing, the plaintiff admitted leaving school on March 22 because she was experiencing abdominal distress. The plaintiff testified that she had attempted to call Grana's office but there was no answer. She also typed an e-mail but never sent it. The plaintiff testified that the 2016 notice said nothing about leaving the classroom, taking too frequent restroom breaks, or failing to notify the administration about an emergency absence. The plaintiff testified that she was unaware of any policies that prohibited her from leaving the classroom to briefly use the restroom or for some other emergency. The plaintiff testified that if she had been allowed to correct the deficiencies identified in 2017-2018, she could have remedied the behavior.

¶ 17     Yu testified as to the occasions when the plaintiff left the classroom during co-teaching. Yu testified that the plaintiff had left class about 15 times in total, including the specific times mentioned in the notice of charges. Yu testified that it was not typical for teachers to leave their classrooms for extended periods. Yu spoke to the plaintiff both before and after spring break about her departures from the classroom. Yu told the plaintiff that she felt very uncomfortable when the plaintiff would leave. In the conversation after spring break, Yu told the plaintiff that she intended to provide the principal with a list of times when the plaintiff left the classroom. Yu testified that the plaintiff's frequent departures made it difficult to co-teach. Yu acknowledged that there was no specific policy or rule that prohibited a teacher from leaving the classroom and that teachers had to rely on their "professional judgment."

¶ 18     Kimberly Reuter testified that in 2017-2018 she taught in the classroom next to the plaintiff. The plaintiff would occasionally ask her to watch the classroom when the plaintiff went to the bathroom, and the plaintiff would do the same for her. Reuter testified that if she ever left the classroom for something other than going to the bathroom, she would arrange a substitute with the school office. She acknowledged that there was no written rule or policy as to substitute coverage but testified that Grana had verbally conveyed that substitutes should be arranged through the office.

¶ 19     Kristina Harvat, also a teacher at the elementary school, acknowledged covering the fifth-period social studies class for the plaintiff on March 22 but stated that she delivered the lesson plan without any issues. Harvat testified that she had never seen the plaintiff leave her students unsupervised. Harvat was not aware of any written rule or policy that required a teacher to get office approval if the teacher needed to briefly leave the classroom. She testified that she had taken over a class for a co-teacher for longer than 10 minutes without a substitute coming in.

¶ 20    Grana testified that when he became aware of the plaintiff's frequent departures from the classroom, he interviewed her. During the interview, the plaintiff admitted to leaving the classroom during co-teaching in all of the instances alleged. The plaintiff told Grana that she had left students unattended "almost weekly" to use the restroom and for other reasons. Grana testified that it was not customary for a teacher to appoint substitutes for his or her class without administrative approval.

¶ 21    Dalton testified that when she interviewed the plaintiff about her frequent departures, the plaintiff admitted to leaving the classroom for the reasons set forth in the notice of dismissal. When Dalton asked the plaintiff to explain her conduct, the plaintiff told her that she had no explanation for her conduct, and the plaintiff agreed that her conduct did not comply with the Board's policies and procedures. The plaintiff also told Dalton that she did not think she was doing anything wrong by failing to notify the office of her departures because she had always informed Yu when she was leaving.

¶ 22    Dalton testified that, after the interview with the plaintiff, she concluded that the plaintiff violated the 2016 notice of remedial warning by not acting professionally and not complying with policies related to doing her job. Dalton testified that the main responsibility of a teacher is to be in class instructing students. The plaintiff's frequent departures violated Board policies related to ethics and conduct and responsibilities and duties. Dalton acknowledged that the plaintiff's conduct in leaving her classroom, standing alone, would not have prompted her to recommend the plaintiff's dismissal. Rather, she would have issued a notice of remedial warning. The dismissal was based on violating the 2016 notice to remedy. Dalton testified that she did not believe that the plaintiff had lied during the interview regarding leaving the classroom. Dalton acknowledged that there was no written policy regarding a procedure for when a teacher needs to leave the classroom.

¶ 23    On May 10, 2019, after a two-day hearing, the hearing officer issued a written opinion finding that the Board had cause to dismiss the plaintiff from her employment and recommending that the dismissal be upheld. The hearing officer found that the plaintiff's 2017-2018 conduct, standing alone, would warrant no more than a notice of remedial warning. The hearing officer noted that the 2016 notice to remedy required the plaintiff to exercise appropriate and professional judgment, to conduct herself professionally, and to follow all the Board's policies, procedures, and practices. The hearing officer found that her conduct in 2017 and 2018 failed to comply with these remedial requirements.

¶ 24    The hearing officer found that the plaintiff exercised inappropriate and unprofessional judgment when she left the classroom to tend to personal matters, because she could have tended to such matters during times of the workday that she was not engaged in instructing students. Leaving Yu alone to teach was also unprofessional because it made it difficult for Yu to perform her responsibilities as a language coach, as she had to instead focus on teaching content.

¶ 25    As to the plaintiff leaving her classroom on March 22, the hearing officer noted that Grana testified that there was an absence reporting process and a procedure for filling teacher absences. While the policy was not written, Grana testified that he had verbally communicated the proper procedure for procuring a substitute teacher. The hearing officer found it undisputed that it was improper for a teacher to arrange for her substitutes. The hearing officer found that the plaintiff demonstrated a lack of professional judgment and a failure to follow proper procedures. As the plaintiff was warned in 2016 to not repeat instances of inappropriate and unprofessional judgment, her conduct in 2017-2018 violated the 2016 notice of remedial warning. The hearing officer concluded that the plaintiff's dismissal complied with the School Code because she had failed to

remediate her behavior. The Board adopted the hearing officer's findings of fact and recommendation without modification and passed a resolution affirming the plaintiff's dismissal.

¶ 26 On June 18, 2019, the plaintiff filed a complaint in the circuit court of Lake County for administrative review of the Board's final decision, under section 24-16 of the School Code (105 ILCS 5/24-16 (West 2016)), as well as the Administrative Review Law (Review Law) (735 ILCS 5/3-101 *et seq.* (West 2016)). On January 7, 2020, following a hearing, the trial court reversed the Board's decision, concluding that the plaintiff had not violated the 2016 notice of remedial warning. The trial court determined that the 2017-2018 conduct was not sufficiently similar and causally related to the 2016 notice to remedy. In other words, the plaintiff was not warned that her conduct in leaving her classroom would violate the 2016 notice to remedy. Accordingly, the trial court found the Board's decision to dismiss the plaintiff was clearly erroneous. The Board filed a timely notice of appeal from this order.

¶ 27                                    II. ANALYSIS

¶ 28 On appeal, the Board argues that the trial court erred in vacating its final administrative decision to dismiss the plaintiff from her position. The Board notes that the 2016 notice of remedial warning required the plaintiff to use professional judgment and to follow the policies and procedures of the Board. The Board argues that the hearing officer properly determined that the plaintiff's subsequent conduct in leaving her classroom violated the 2016 notice to remedy, and that the officer's conclusion was not clearly erroneous.

¶ 29 The plaintiff argues that the 2016 notice to remedy could not serve as a basis for her dismissal. She notes that the 2016 notice to remedy was based on failing to cooperate with the Board's investigation of her DCFS case and giving untruthful statements during that investigation.

She argues that the 2018 charges were not based on dishonesty or a lack of cooperation and, thus, did not violate the 2016 notice to remedy.

¶ 30    The purpose of the tenure provisions of the School Code is to provide tenured teachers with job security to ensure continued service by experienced teachers, thus improving the quality of Illinois schools. *Birk v. Board of Education of Flora Community Unit School District No. 35*, 104 Ill. 2d 252, 257 (1984) (*per curiam*). Section 24-12(d)(1) of the School Code provides that "[b]efore setting a [dismissal] hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes that, if not removed, may result in charges." 105 ILCS 5/24-12(d)(1) (West 2016). "Remediable" conduct is defined as conduct by a teacher that could ordinarily be remedied if called to his or her attention. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 163 (2006). "Because compliance with the procedures set forth in section 24-12 is jurisdictional, if a warning is not given with respect to a remediable cause, the board lacks jurisdiction to dismiss the teacher." *Board of Education of Argo-Summit School District No. 104 v. State Board of Education*, 138 Ill. App. 3d 947, 950 (1985).

¶ 31    Section 24-16 of the School Code specifically adopts the Review Law for judicial review of final administrative decisions of the Board under section 24-12 of the School Code. 105 ILCS 5/24-16 (West 2016). In administrative cases, we review the decision of the administrative agency and not the ruling of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). In the present case, the administrative agency is the Board. Generally, we review the Board's decision, not that of the hearing officer, which is merely a recommendation to the Board. *Raitzik v. Board of Education of the City of Chicago*, 356 Ill. App. 3d 813, 823 (2005); see also *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*,

2016 IL 120236, ¶¶ 57, 61 ("the decision of the school board is the final decision for purposes of administrative review," even where witness credibility drove the findings and the hearing officer, rather than the board, observed the witnesses). Here, the Board adopted without modification the hearing officer's findings and dismissal recommendation.

¶ 32    Our review of an administrative agency's decision to uphold the dismissal of an employee requires a two-step approach. *Beggs*, 2016 IL 120236, ¶ 63. First, we must determine whether the agency's factual determinations were against the manifest weight of the evidence. *Id.* A determination is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Id.* ¶ 50. Second, we must determine whether the factual findings provided a sufficient basis for the agency's conclusion that cause existed for discharge or dismissal. *Id.* ¶ 63. The clearly erroneous standard of review applies to this mixed question of law and fact. *Id.* A decision is clearly erroneous "where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 33    In the present case, the parties do not challenge the Board's factual findings. The issue is only whether the factual findings supported the Board's conclusion that cause existed for the plaintiff's discharge. The School Code states that a tenured teacher can only be fired for cause. See 105 ILCS 5/24-12(d)(1) (West 2016). Although the School Code does not specifically define "cause," case law has defined it as "that which law and public policy deem as some substantial shortcoming which renders a teacher's continued employment detrimental to discipline and effectiveness." *Raitzik*, 356 Ill. App. 3d at 831. A school board's "finding of cause 'commands our respect' and substantial deference, and we may not substitute our judgment for that of the [school

board] in this regard." *Id.* (quoting *Walsh v. Board of Fire & Police Commissioners of the Village of Orland Park*, 96 Ill. 2d 101, 105 (1983)). Nonetheless, "[a] school board's determination of cause to discharge is not *prima facie* true and correct; it is instead subject to reversal where it is arbitrary, unreasonable, or unrelated to the requirements of service." *Beggs*, 2016 IL 120236, ¶ 63.

¶ 34    In the present case, the Board argues that it did not err in determining that the plaintiff's 2017-2018 conduct violated the 2016 notice to remedy and was a proper basis for dismissal. We agree. The 2016 notice to remedy specifically warned the plaintiff to exercise appropriate and professional judgment, to conduct herself professionally, and to follow all the Board's policies and practices. There is no question that the plaintiff's conduct in 2017-2018 violated these warnings. It is axiomatic that a teacher's most important professional responsibility is to educate students. While the plaintiff, in her appellee brief, characterized her conduct as "occasionally leaving the classroom," Yu testified that the plaintiff left her classroom about 15 times in total. Further, many of these instances were not brief absences but lasted between 15 and 40 minutes. Yu testified that the plaintiff's frequent departures made it difficult to co-teach.

¶ 35    Moreover, the record indicates that the plaintiff acknowledged that her conduct when leaving the classroom to call the airline was unprofessional. The frequent departures were further exacerbated by the fact that after her fifth-period class, the plaintiff was not scheduled to instruct any other classes and had the remainder of the school day for planning purposes. As noted by the hearing officer, this was a more appropriate time to tend to personal matters. The evidence also clearly demonstrated that it was improper for the plaintiff to arrange for her substitutes without seeking administrative approval. The plaintiff's unprofessional and improper conduct occurred less than two years after the 2016 notice to remedy was issued. Based upon the circumstances here, we are not left with a definite or firm conviction that a mistake was committed; nor can we say

that the Board's decision to discharge the plaintiff was arbitrary, unreasonable, or not based on the requirements of service.

¶ 36    The plaintiff relies on *Beggs* for the proposition that the Board's determination was improper because the conduct that resulted in her dismissal was not sufficiently similar to the conduct that was the basis for her notice to remedy. In *Beggs*, a tenured teacher, Lynne Beggs, received written notice of remedial warning for repeatedly arriving late for school and failing to provide lesson plans for the days she was absent. *Id.* ¶ 10. The notice stated, in relevant part, that Beggs was unprofessional and insubordinate in arriving late for work, failing to use classroom time appropriately and effectively, and failing to provide adequate lesson plans to be used during her absences. *Id.* The notice further stated that if the deficiencies were repeated in the next two years, it could result in her dismissal. *Id.* ¶ 11. Thereafter, Beggs was granted a leave of absence. After her leave, she returned to work for two days, March 19 and 20, 2012. *Id.* ¶¶ 12-13.

¶ 37    The school board subsequently adopted a resolution to dismiss Beggs from her position. *Id.* ¶ 14. The matter proceeded to a hearing before an impartial hearing officer. The Board argued that Beggs violated the notice to remedy in three ways: (1) she did not effectively teach her first-hour geometry class when she returned to work on March 19; (2) she arrived late for work on March 20; and (3) she failed to have lesson plans available on March 21 and 22, when she was absent. *Id.* ¶ 15. The hearing officer concluded that the school board failed to establish that Beggs had violated the notice to remedy. *Id.* ¶ 24. The hearing officer found that Beggs did not fail to use classroom time appropriately and effectively on March 19, her late arrival on March 20 had been excused, and her lesson plans had arrived on March 21 and 22 by the start of the school day. *Id.* ¶¶ 25-27. The school board subsequently modified the hearing officer's findings of fact and made a final decision to dismiss Beggs. *Id.* ¶ 29. Beggs filed a complaint asking for administrative

review, and the trial court reversed the Board's decision, finding that it was arbitrary, unreasonable, and unrelated to service. *Id.* ¶ 38. The appellate court affirmed the trial court's decision. *Id.* ¶ 39. Thereafter, our supreme court allowed the school board's petition for leave to appeal. *Id.* ¶ 41.

¶ 38    Our supreme court reversed the Board and upheld the hearing officer's determination. The supreme court determined that the hearing officer's factual findings were not against the manifest weight of the evidence. The evidence showed that Beggs's late arrival was excused and that she had submitted lesson plans for the days she was absent. *Id.* ¶¶ 66-67. Our supreme court acknowledged that Beggs did not begin teaching her first-hour geometry class on March 19 until about 15 minutes after the class start time and that this was a technical violation of the notice of remedial warning. *Id.* ¶ 68. The court noted, however, that Beggs was present in class on time; that the first 10 minutes was taken up by announcements, the pledge of allegiance, and recording attendance; and that, in the remaining five minutes, Beggs was "getting her bearings" after a month-long absence. *Id.* ¶ 69. In consideration of these factors, the court held that the violation was an understandable and minor breach of the notice to remedy and that the school board's determination to dismiss Beggs was arbitrary, unreasonable, and unrelated to the requirements of service. *Id.* ¶¶ 71-72.

¶ 39    As emphasized by the plaintiff, the *Beggs* court went on to state that "[o]nly a clear and material breach of the warning notice that was causally related to [Beggs's] past deficiencies would support her dismissal." *Id.* ¶ 72. The court had also noted that the remedial warning was "spawned" by Beggs's late arrivals and lack of lesson plans and concluded that the requirement to use classroom time effectively in the remedial notice must have been related to Beggs's late arrivals. Since Beggs was not late on March 19, the court concluded that her "ineffective teaching" on that date, "evaporat[ed] as a cause for dismissal." *Id.* ¶ 69. The plaintiff interprets these statements to

mean that the discharge of a tenured teacher cannot be upheld if the conduct that resulted in the dismissal was not sufficiently similar to the conduct that was the basis of the remedial notice.

¶ 40 The plaintiff's reading of *Beggs* is too broad. The court did not reverse the school board's decision because Beggs's subsequent conduct was not similar to the conduct that led to her notice to remedy. Rather, the court found that the school board's factual findings involving two of the charges were against the manifest weight of the evidence. Concerning the third charge—Beggs not effectively teaching her first-hour geometry class—the court held that, under the circumstances, this was a minor breach and was not, standing alone, a sufficient basis for her dismissal. The court noted, only as further support, that the remedial requirement to use class time effectively must have been related to Beggs's late arrivals because the record did not indicate that Beggs's ability to effectively teach was a problem at the time of the remedial notice or at the time of discharge. The court thus concluded that the fact she was not late on March 19 provided further support for the hearing officer's determination that she had not violated the notice to remedy.

¶ 41 The decision in *Beggs* supports our determination in this case. The *Beggs* court upheld the hearing officer's determination, concluding that, under the facts and circumstances there, it was not clearly erroneous. Here, the notice to remedy specifically warned the plaintiff to exercise appropriate and professional judgment, conduct herself professionally, and follow all the Board's policies, procedures, and practices. The hearing officer determined that the plaintiff's conduct— excessively leaving the classroom for extended periods—violated these requirements. As noted, the Board adopted the hearing officer's determination without modification. Just as in *Beggs*, based on the record here, we cannot say that the decision of the hearing officer or the Board was arbitrary, unreasonable, or not related to the requirements of service.

¶ 42                                III. CONCLUSION

¶ 43    For the reasons stated, the judgment of the circuit court of Lake County is reversed and the

decision of the Board is affirmed.

¶ 44    Circuit court judgment reversed.

¶ 45    Board decision affirmed.

**No. 2-20-0095**

| | |
|---|---|
| **Cite as:** | *Kalisz v. Board of Education of Kildeer Countryside Community Consolidated School District 96*, 2021 IL App (2d) 200095 |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 19-MR-610; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Joseph J. Perkoski, M. Neal Smith, and Kevin P. Noll, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Joshua M. File, of Katz, Friedman, Eisenstein, Johnson, Bareck & Bertuca, P.C., of Chicago, for appellee. |